UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JB KNOWLEDGE TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| BUILDINGCONNECTED, INC., | § | |
| DUSTIN DEVAN, AND | § | JURY DEMANDED |
| JESSE PEDERSEN, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff JB Knowledge Technologies, Inc., for its Complaint against Defendants BuildingConnected, Inc., Dustin DeVan, and Jesse Pedersen (collectively, "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.     This is a suit for damages and injunctive relief for false or misleading descriptions of fact or false or misleading representations of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); misappropriation of trade secrets under the Texas Uniform Trade Secrets Act; and tortious interference with existing contract, tortious interference with prospective business relations, trademark infringement, civil conspiracy, unfair competition, and unjust enrichment under Texas common law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This Court also has original jurisdiction over this controversy under the Lanham Act. This Court has supplemental jurisdiction over Plaintiff's Texas law claims because they are within the same case or controversy pursuant to 28 U.S.C. § 1367. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2.     This Court has personal jurisdiction over Defendants because Defendants are individuals or a corporation conducting business in this State, including in this District and/or, on information and belief, have conducted their tortious activities in this State. The Defendants' acts occurred in this State, including in this District, and Defendants should anticipate being haled into court in this State.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because this is a civil action involving allegations under federal statutes, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

4.     Plaintiff JB Knowledge Technologies, Inc. ("JB Knowledge" or "Plaintiff") is a corporation organized and existing under the laws of the State of Texas. JB Knowledge's principal place of business is 112 North Bryan Avenue, Bryan, TX 77803.

5.     Defendant BuildingConnected, Inc. ("BuildingConnected") is a corporation organized and existing under the laws of the State of Delaware. Defendant BuildingConnected may be served with process by serving its registered agent for service of process, Incorporating Services, Ltd., 3500 S. Dupont Highway, Dover, DE 19901.

6.     Defendant Dustin DeVan ("DeVan") is a natural person and resident citizen of California. The Court has personal jurisdiction over DeVan because he directed his tortious conduct at this State. Specifically, Defendant DeVan acquired and obtained proprietary and confidential information that belongs to JB Knowledge, a Texas entity, by accessing secure servers and computers located in Texas, and used and misappropriated such proprietary and confidential information to develop construction bidding software for Defendant BuildingConnected. Defendant DeVan should therefore anticipate being haled into court in this

State. Defendant DeVan has committed various tortious acts described below, thereby making him subject to the jurisdiction of this Court through Texas' Long-Arm Statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Defendant DeVan may be served with process at his place of business, 535 Mission Street, Floor 19, San Francisco, CA 94105.

7.      Defendant Jesse Pedersen ("Pedersen") is a natural person and resident citizen of California. The Court has personal jurisdiction over Pedersen because he directed his tortious conduct at this States. Specifically, on information and belief, Defendant Pedersen acquired confidential and proprietary information that belongs to JB Knowledge, a Texas entity, and used and assisted in the misappropriation of such proprietary and confidential information to develop construction bidding software for Defendant BuildingConnected. Defendant Pedersen should therefore anticipate being haled into court in this State. Defendant Pedersen has committed various tortious acts described below, thereby making him subject to the jurisdiction of this Court through Texas' Long-Arm Statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Defendant Pedersen may be served with process at his place of business, 535 Mission Street, Floor 19, San Francisco, CA 94105.

## FACTUAL BACKGROUND

**A.   JB Knowledge and Its Proprietary and Confidential SmartBidNet Software**

8.      JB Knowledge is a technology and software company founded by James Benham out of a Texas A&M University dorm room in 2001. Over a period of years and at considerable time, resources and expense, JB Knowledge developed proprietary and confidential construction bid cloud-based software, called SmartBidNet, for use by commercial general contractors and subcontractors ("SmartBidNet Software" or the "Software").

9.      SmartBidNet Software is a construction bid invitation and bid management software for general contractors that uses the Internet to provide secure access and online

collaboration to subcontractors and suppliers for seamless coordination in construction project bidding. JB Knowledge developed its Software based on years of research and development. Over the past decade, JB Knowledge has spent approximately $8 million developing and updating its SmartBidNet Software.

10.     JB Knowledge is the sole owner of SmartBidNet Software. Over the last ten years, SmartBidNet Software has become the preferred bidding software for commercial general contractors worldwide. JB Knowledge is actively involved in construction projects in multiple regions across the United States and around the world. JB Knowledge has approximately 800 customers working on countless projects around the world using the company's SmartBidNet Software. The SmartBidNet Software provides a competitive advantage to JB Knowledge over other bidding software companies, and provides a competitive advantage to JB Knowledge's licensees over other commercial general contractors in their bidding processes.

11.     JB Knowledge's lists of advisory board members and customers are also proprietary and confidential proprietary information of the company. JB Knowledge developed its advisory board and its customer lists through careful, methodical, and targeted research and cultivation of relationships. JB Knowledge's advisory board provides invaluable insight into the best business strategies for JB Knowledge to pursue in the construction software market. JB Knowledge's advisory board members owe a fiduciary duty to JB Knowledge as they are privy to JB Knowledge's proprietary and confidential business plans, forecasts, and strategies.

12.     JB Knowledge developed its customer lists with many hours of labor and interaction. The company's customer lists include non-public information such as individuals' contact names, non-public telephone numbers and email addresses, and other pertinent business data. JB Knowledge has never shared its proprietary Software or the identity of its advisory

board members or customers with the general public or to JB Knowledge's competitors. This information is not generally known or readily accessible to the general public or to JB Knowledge's competitors.

13.     JB Knowledge designated and protects its proprietary bidding SmartBidNet Software as confidential by JB Knowledge's treatment and course of conduct, including its internal policies and procedures. All employees of JB Knowledge must sign an employee agreement and/or non-disclosure agreement that forbids them from sharing JB Knowledge's proprietary and confidential information with third parties. These agreements must be re-signed and re-acknowledged annually. In addition, JB Knowledge's headquarters in Bryan, Texas is a secure facility with door locks and an alarm system.

14.     Physical access to the servers that host JB Knowledge's SmartBidNet Software is available only to a small number of JB Knowledge employees who provide service and support for the servers.

15.     Employees of JB Knowledge do not have automatic access to the SmartBidNet Software. Instead, their access is granted on an as-needed basis and monitored and controlled closely. All employees must participate in an exit interview when leaving JB Knowledge. During the exit interview, the employees' obligations to protect JB Knowledge's confidential and proprietary information and materials is reiterated.

16.     The SmartBidNet Software is a cloud-based software. This means it is accessible through a web browser. As the sole owner of the SmartBidNet Software, JB Knowledge enters into license agreements with general commercial contractors. Pursuant to its license agreements, JB Knowledge provides access to its Software to the licensees. Specifically, a licensee receives either a username and password or access code from JB Knowledge.

17.     Users attempting to access the SmartBidNet Software are presented with a secure authentication page that requests either a username and password or an access code. A user's entry is cross-checked against a secure database containing the correct credentials for authorized users. Once users are authenticated, they are granted access to the SmartBidNet Software.

18.     JB Knowledge also provides periodic updates to the SmartBidNet Software by updating the Software on the company's cloud servers. When a user is issued a license to the SmartBidNet Software, the user also gain access to the Software's support website and other written materials such as user guides. These written and online materials are also proprietary to and protected by JB Knowledge in the same manner as its Software.

19.     JB Knowledge does not license, and has never directly licensed, the SmartBidNet Software to entities that directly compete with JB Knowledge in the same bidding software market, including the Defendants.

20.     Users interested in trying the SmartBidNet Software may be granted access to the Software for thirty days. To gain access to this 30-day demonstration version of the Software, users must provide their full name, phone number, email address, company, and location to JB Knowledge. After receiving a completed online application for a demonstration version of the Software, a JB Knowledge representative reviews the required information and verifies it to ensure that the request is being made by a legitimate potential customer. If the user is approved, a JB Knowledge representative contacts the potential customer prior to granting access to the trial version of the Software.

21.     Since at least August 2008, JB Knowledge has advertised, marketed, distributed, and licensed its SmartBidNet Software using the trademark "BID MANAGEMENT SIMPLIFIED" (the "Mark"). As a result of JB Knowledge's use and promotion of its Software

under the Mark, the Mark has come to distinguish JB Knowledge's SmartBidNet Software from other bidding software and to distinguish the source or origin of JB Knowledge's products from the products of other companies. As a result of these efforts by JB Knowledge, relevant consumers in the  construction bidding software market recognize and associate the Mark with JB Knowledge and the SmartBidNet Software. As a result of JB Knowledge's use and promotion of the Mark with the Software, JB Knowledge has acquired valuable common-law rights in the Mark.

**B.   BuildingConnected and its Co-Founders CEO Dustin DeVan and CTO Jesse Pedersen**

22.    Defendant Dustin DeVan is a co-founder and Chief Executive Officer of Defendant BuildingConnected. On January 7, 2012, Defendant DeVan used deception to obtain access to a demonstration version of the SmartBidNet Software. Defendant DeVan signed up for the demonstration version of the SmartBidNet Software on JB Knowledge's website. In his online application, Defendant DeVan listed his company as "Devan Technologies." Defendant DeVan did this even though, on information and belief, he had already co-founded Defendant BuildingConnected and was already developing a competitive bidding software at that time.

23.    In his online application, Defendant DeVan failed to disclose that he was the founder and chief executive officer of a competitor company, Defendant BuildingConnected, and that Defendant BuildingConnected was developing competing bidding software. At the time of Defendant DeVan's improper access, JB Knowledge was not aware of Defendants' deceptive and unlawful purpose in accessing SmartBidNet Software.

24.    Subsequently, Defendant DeVan again used deception to access the SmartBidNet Software. Specifically, on March 28, 2013, Defendant DeVan tried to access the SmartBidNet Software through an online request for a 30-day free trial of the Software. This time, Defendant

DeVan identified his company in his online application as "Bali Constructions [sic]." On information and belief, Defendant DeVan is not an employee of Bali Construction. On information and belief, Bali Construction is not a customer of JB Knowledge, but is an existing construction company.

25.     In his online application, Defendant DeVan failed to disclose that he was the founder and chief executive officer of a competitor company, Defendant BuildingConnected, and that Defendant BuildingConnected was developing competing bidding software.

26.     On information and belief, Bali Construction personnel intentionally provided a company email address to Defendant DeVan to use in attempting to access JB Knowledge's SmartBidNet Software. Specifically, Bali Construction personnel set up and provided the email address dustin@bali-construction.com to Defendant DeVan. Defendant DeVan listed this email address in his online application, and identified Bali Construction as his company name. Defendant DeVan used the Bali Construction email address and corresponded with a JB Knowledge representative using the email address dustin@bali-construction.com.

27.     In his online application, Defendant DeVan stated that he "ha[d] used smartbidnet [sic] before. I just need to use the 30-Day trial to show my team members." Once again, Defendant DeVan obtained access to the SmartBidNet Software through deception. On information and belief, Bali Construction aided and abetted Defendant DeVan in deceiving JB Knowledge, providing unauthorized access to JB Knowledge's SmartBidNet Software, and in misappropriating JB Knowledge's trade secrets. At that time, JB Knowledge was not aware of Defendants' deceptive and unlawful purpose in accessing SmartBidNet Software.

28.     Defendant Jesse Pedersen is a co-founder and Chief Technology Officer of Defendant BuildingConnected. On information and belief, Defendant Pedersen assisted and

benefited from Defendant DeVan's deception in accessing the SmartBidNet Software. On information and belief, Defendant Pedersen also participated in the misappropriation of JB Knowledge's trade secrets and proprietary and confidential information.

29.     Defendant BuildingConnected is a new entrant in the bidding software industry. On information and belief, Defendant BuildingConnected did not have its own commercial bidding software until two years ago. Defendant BuildingConnected is now actively competing against JB Knowledge in the bidding software industry using software based on the SmartBidNet Software.

30.     The Defendants used JB Knowledge's SmartBidNet Software for Defendants' own commercial purposes. Specifically, Defendants used SmartBidNet Software as a basis to develop their competing bidding software.

31.     JB Knowledge's SmartBidNet Software contains proprietary and confidential trade secrets that were developed over a period of years and at considerable expense to JB Knowledge. Defendants have accessed, used and/or received JB Knowledge's trade secrets, including those contained in SmartBidNet Software, and have used them to develop their own competing software.

32.     Following JB Knowledge being made aware of Defendants' acts and omissions, JB Knowledge contacted Defendants, who denied all unlawful activities. JB Knowledge recently learned of Defendants' deception and unlawful acts.

33.     In addition to Defendants' unlawful access and/or use of SmartBidNet Software, Defendants, on information and belief, have represented to others that JB Knowledge's customers are Defendant BuildingConnected's customers.

34.     Defendants have gained unauthorized access to JB Knowledge's proprietary and confidential list of advisory board members and its proprietary and confidential lists of customers. Defendants are using this proprietary and confidential information to solicit and induce JB Knowledge's advisory board members to resign and work with Defendant BuildingConnected and induce them to disclose JB Knowledge's proprietary and confidential information and trade secrets.

35.     At least one JB Knowledge advisory board member and fiduciary has resigned his board membership and, on information and belief, is working with Defendants. On information and belief, the former JB Knowledge advisory board member is disclosing proprietary and confidential information of JB Knowledge to the Defendants including but not limited to, the identity and contact information of JB Knowledge advisory board members.

36.     The Defendants are also actively contacting and soliciting JB Knowledge's customers. On information and belief, Defendants' purpose in contacting JB Knowledge customers is to persuade these customers to switch to Defendants' software, which is based on SmartBidNet Software.

37.     Defendant BuildingConnected currently uses the mark "BID MANAGEMENT SIMPLIFIED" in connection with its construction bidding software, including on its website and in its marketing materials.

## COUNT I
## Violations of the Lanham Act

38.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-37 as if fully set forth herein.

39.     Defendants have made and distributed false or misleading descriptions of fact or false or misleading representations of fact in connection with their goods and services.

Specifically, Defendants have made false or misleading statements about the development, origin, and superiority of their construction bidding software, that certain construction companies are customers of Defendants and/or that those customers prefer Defendant BuildingConnected's bidding software. Defendants have made and distributed these false or misleading descriptions of facts or misleading representations of facts in interstate commerce and in this District.

40.     Defendants' statements actually deceive, or have a tendency to deceive, a substantial segment of relevant customers and potential customers. Defendants' deception is material in that the alleged false or misleading descriptions or misrepresentations of fact regarding Defendants' products or users of Defendants' products are likely to influence the purchasing decisions of relevant customers or potential customers.

41.     Defendants' false and misleading descriptions of fact and false and misleading representations of fact injure both relevant consumers and JB Knowledge.

42.     Defendants' false and misleading descriptions and representations of fact violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43.     Defendants have caused, and will continue to cause, immediate and irreparable injury to JB Knowledge, including injury to JB Knowledge's business, reputation, and goodwill, for which there is no adequate remedy at law. JB Knowledge is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with Defendants from engaging in further acts of false or misleading descriptions and representations of fact and ordering removal of all of Defendants' false or misleading descriptions or representations of fact.

44.     Pursuant to 15 U.S.C. § 1117, JB Knowledge is further entitled to recover from Defendants the damages JB Knowledge has sustained as a result of Defendants' acts in violation

of 15 U.S.C. § 1125(a). At present, JB Knowledge is unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendants' acts.

45.     Pursuant to 15 U.S.C. § 1117, JB Knowledge is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a). At present, JB Knowledge is unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of Defendants' acts.

46.     Pursuant to 15 U.S.C. § 1117, JB Knowledge is further entitled to recover the costs of this action. On information and belief, Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling JB Knowledge to recover additional damages and reasonable attorneys' fees.

**COUNT II**
**Misappropriation of Trade Secrets Under**
**Texas Uniform Trade Secrets Act**

47.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-46 as if fully set forth herein.

48.     JB Knowledge exclusively owns JB Knowledge's trade secrets, including but not limited to, the trade secrets contained in JB Knowledge's proprietary SmartBidNet Software; related user guides and content; JB Knowledge's list of advisory board members; and JB Knowledge's lists of customers, that JB Knowledge developed over the course of years and at considerable time, resources, and expense.

49.     At all relevant times, JB Knowledge made efforts that were and are reasonable under the circumstances to maintain the secrecy of its trade secrets, including but not limited to: requiring a party to enter into an agreement with JB Knowledge that strictly governed that party's access to, and use of, the SmartBidNet Software and related materials prior to

JB Knowledge disclosing the Software and materials to that party; restricting use of the SmartBidNet Software and its online supporting materials so that they function only with the use of credentials JB Knowledge provided; requiring employees of JB Knowledge to sign non-disclosure and/or other employee agreements restricting the disclosure of JB Knowledge's proprietary and confidential information; and advising all licensed users of JB Knowledge's restrictions to the SmartBidNet Software.

50.     JB Knowledge is the sole owner of proprietary and confidential information that constitutes trade secrets under the Texas Uniform Trade Secrets Act. Tex. Civ. Prac. & Rem. Code Ann. § 134A, *et seq*. JB Knowledge's trade secrets were not generally known or readily accessible to the general public or to JB Knowledge's competitors, and are not generally known or readily accessible to the general public or to JB Knowledge's competitors.

51.     At all times relevant to this litigation, JB Knowledge did not authorize Defendants or their agents, employees, representatives, or other persons acting in concert with Defendants to access, receive or use JB Knowledge's trade secrets.

52.     JB Knowledge's trade secrets are items of independent economic value. The value of JB Knowledge's trade secrets is derived from their not being generally known by, and not being readily ascertainable or available to, third parties who can obtain economic value from the disclosure or use of JB Knowledge's trade secrets.

53.     Without JB Knowledge's knowledge, authorization, or consent, Defendants accessed, misappropriated, used and/or disclosed JB Knowledge's trade secrets for their own benefit. Defendants' misappropriation was willful and without legal justification.

54.     On information and belief, Defendants used JB Knowledge's proprietary and confidential SmartBidNet Software to develop Defendants' own competing construction bidding

software. In addition, on information and belief, Defendants have used JB Knowledge's misappropriated customer lists to solicit business from those customers. On information and belief, Defendants have used JB Knowledge's advisory board member list to solicit business or to obtain other proprietary JB Knowledge information for Defendants.

55.     Defendants used deception to surreptitiously access and misappropriate JB Knowledge's trade secrets. In addition, Defendants' bidding software is itself a confidential software only accessible by contacting Defendants and gaining access to a trial or full version of the software. JB Knowledge could not have known that SmartBidNet Software was misappropriated by Defendants until Defendants began actively promoting their own competing bidding software. Defendants' acts were inherently undiscoverable because Defendants actively concealed their identities, affiliations, and development of competing software and use of JB Knowledge's proprietary and confidential information.

56.     Similarly, Defendants used deception to surreptitiously access and misappropriate JB Knowledge's proprietary and confidential lists of customers and advisory board members. Defendants' acts were hidden until Defendants began reaching out to those customers and advisory board members and these acts were reported to or discovered by JB Knowledge. As soon as JB Knowledge learned of Defendants' conduct, JB Knowledge began actively and diligently investigating its causes of action. Furthermore, it is objectively verifiable that JB Knowledge was and continues to be injured by Defendants' actions. Specifically, JB Knowledge has lost customers and, on information and belief, at least one advisory board member as a result of Defendants' tortious conduct.

57.     As a direct and proximate result of Defendants' misappropriation of JB Knowledge's trade secrets, JB Knowledge has sustained and will sustain substantial damages,

in an amount as yet unknown but to be determined at trial. JB Knowledge has been and will continue to be harmed, including through Defendants' unauthorized and unlicensed use of JB Knowledge's trade secrets and through Defendants' ability to unfairly compete with JB Knowledge in developing and offering competing bidding software.

## COUNT III
### Tortious Interference With Existing Contract

58.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-57 as if fully set forth herein.

59.     JB Knowledge had and has valid and existing contracts with its current and former advisory board members. JB Knowledge's advisory board members owe fiduciary duties to JB Knowledge.

60.     On information and belief, Defendants willfully and intentionally interfered with JB Knowledge's contract with its former advisory board member by inducing him to disclose JB Knowledge's proprietary and confidential information and trade secrets in violation of his contractual obligations to JB Knowledge. On information and belief, the former advisory board member breached his contractual obligations and fiduciary duties to JB Knowledge.

61.     Defendants'   interference   has   proximately   caused   actual   damages   to JB Knowledge in an amount to be determined at trial.

62.     As a result of Defendants' interference, JB Knowledge is entitled to recover all actual, consequential, and foreseeable damages arising from this wrongful conduct, and exemplary or punitive damages from Defendants.

## COUNT IV
### Tortious Interference With Prospective Business Relations

63.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-62 as if fully set forth herein.

15

64.     Defendants knew that JB Knowledge had a reasonable probability of entering into valid business relationships with several additional construction companies to license SmartBidNet Software, with the probability of future economic benefit to JB Knowledge.

65.     Defendants consciously acted to prevent these prospective relationships from occurring or knew that interference was certain or substantially certain to occur as a result of their conduct. Specifically, Defendants' tortious conduct, including but not limited to, misappropriating JB Knowledge's trade secrets to develop competing software, intentionally and materially interfered with JB Knowledge's prospective business relationships.

66.     Defendants' interference has proximately caused actual damages to JB Knowledge in an amount to be determined at trial.

67.     As a result of Defendants' interference, JB Knowledge is entitled to recover all actual, consequential, and foreseeable damages arising from this wrongful conduct, and exemplary or punitive damages from Defendants.

## COUNT V
## Common-Law Trademark Infringement

68.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-67 as if fully set forth herein.

69.     JB Knowledge owns all rights, title, and interest in and to the Mark, including all common-law rights in the Mark, and pending applications for the Mark filed with the United States Trademark Office, in connection with bidding software. As a result of JB Knowledge's use and promotion of its Software under the Mark, the Mark has come to distinguish JB Knowledge's SmartBidNet Software from other bidding software and to distinguish the source or origin of JB Knowledge's products from the products of other companies. As a result of these efforts by JB Knowledge, relevant consumers in the construction bidding software

industry in the United States recognize and associate the Mark with JB Knowledge and the SmartBidNet Software. As a result of JB Knowledge's use and promotion of the Mark with the Software in Texas and elsewhere, JB Knowledge has acquired valuable common-law rights in the Mark.

70.     Without JB Knowledge's authorization, Defendants have used and are continuing to use a mark that is strikingly similar to JB Knowledge's Mark with bidding software.

71.     Defendants' unauthorized use of the Mark as described herein is likely to cause confusion, mistake, or deception by relevant consumers, and constitutes trademark infringement under Texas common law.

72.     Defendants have committed the foregoing acts of infringement with full knowledge of JB Knowledge's prior rights in the Mark and with the willful intent to cause confusion and trade on JB Knowledge's goodwill and reputation.

73.     Defendants' conduct is causing immediate and irreparable harm and injury to JB Knowledge, and to its goodwill and reputation. Defendants' conduct will continue to both damage JB Knowledge and confuse the public unless enjoined by this Court. JB Knowledge has no adequate remedy at law.

74.     JB Knowledge is entitled to, among other relief, injunctive relief and an award of its actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of this lawsuit, together with pre- and post-judgment interest.

## COUNT VI
## Civil Conspiracy

75.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-74 as if fully set forth herein.

76.     On information and belief, Defendants acted with a long-term former advisory board member and fiduciary of JB Knowledge for the unlawful purpose of misappropriating JB Knowledge's trade secrets, in particular, JB Knowledge's proprietary and confidential customer and advisory board member lists.

77.     Defendants and the former advisory board member had a meeting of the minds to exploit JB Knowledge's trade secrets in violation of the laws of the State of Texas.

78.     Defendants' and the former JB Knowledge board member's acts proximately caused injuries and damage to JB Knowledge.

79.     On information and belief, Defendants and the former advisory board member knew or had reason to know that the identity of JB Knowledge's customers and members of its advisory board were proprietary and confidential information and not generally known to the public or to JB Knowledge's competitors. On information and belief, Defendants and the former advisory board member knew that JB Knowledge had not authorized Defendants' use of JB Knowledge's trade secrets. On information and belief, Defendants and the former advisory board member knew that disclosure by the advisory board member of JB Knowledge's proprietary and confidential information would be a breach of the board member's fiduciary duties to JB Knowledge.

80.     Defendants and the former advisory board member of JB Knowledge used JB Knowledge's proprietary and confidential customer lists and proprietary and confidential identity of members of JB Knowledge's advisory board to unfairly compete with JB Knowledge. Specifically, on information and belief, Defendants contacted members of JB Knowledge's advisory board to persuade them to disclose JB Knowledge's proprietary and confidential

information and trade secrets or to become users of Defendants' software instead of using SmartBidNet Software.

81.     On information and belief, Defendants also contacted JB Knowledge's customers in an effort to convince them to stop using the SmartBidNet Software and start using Defendants' competing software.

82.     On information and belief, Defendants also conspired with third parties to misappropriate JB Knowledge's proprietary and confidential  information and trade secrets.

83.     Defendants' acts proximately caused actual damages to JB Knowledge in an amount to be determined at trial.

84.     In the course of and in furtherance of the conspiracy, Defendants violated the law of the State of Texas as set forth above.

85.     As a result of this conspiracy, JB Knowledge is entitled to recover all actual, consequential, and foreseeable damages arising from this wrongful conduct, and exemplary or punitive damages from Defendants.

## COUNT VII
## Common-Law Unfair Competition

86.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-85 as if fully set forth herein.

87.     The foregoing acts of Defendants constitute unfair competition and misappropriation in violation of Texas common law. For example, JB Knowledge created its valuable SmartBidNet Software, customer lists, and list of advisory board members through extensive time, labor, skill, and money. Defendants used and continue to use JB Knowledge's valuable products and information in direct competition with JB Knowledge, thereby gaining a special advantage in the competition.

88.     JB Knowledge has suffered commercial damage as a result, including loss of goodwill, reputation, and business. JB Knowledge is entitled to recover any and all remedies provided by such common law resulting from Defendants' unlawful acts.

89.     Defendants used deception to unfairly compete with, and misappropriate proprietary and confidential information from, JB Knowledge. In addition, Defendants' bidding software is itself a confidential software only accessible by contacting Defendants and gaining access to a trial or full version of the software. JB Knowledge could not have known that Defendants had misappropriated the SmartBidNet Software until Defendants began actively promoting their own competing bidding software. Defendants' misappropriation and unfair competition were inherently undiscoverable because Defendants actively concealed their identities, affiliations, and development of competing software and use of JB Knowledge's proprietary and confidential information.

90.     Similarly, Defendants used deception to gain unauthorized access to and use of JB Knowledge's proprietary and confidential lists of customers and advisory board members Defendants' acts were hidden until Defendants began reaching out to those customers and advisory board members and these acts were reported to, or discovered by, JB Knowledge. As soon as JB Knowledge learned of Defendants' conduct, JB Knowledge began actively and diligently investigating its causes of action. Furthermore, it is objectively verifiable that JB Knowledge was and continues to be injured by Defendants' actions. Specifically, JB Knowledge has lost customers and, on information and belief, at least one advisory board member as a result of Defendants' tortious conduct.

91.     Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

92.     Defendants intend to continue and will continue their unlawful and infringing acts, unless enjoined by this Court.

93.     Defendants' acts have damaged and will continue to damage JB Knowledge, and JB Knowledge has no adequate remedy at law.

94.     JB Knowledge has suffered loss and damages by reason of the foregoing acts of Defendants, and is thus entitled to recover compensatory damages, injunctive relief and/or other equitable relief.

**COUNT VIII**
**Common-Law Unjust Enrichment**

95.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-94 as if fully set forth herein.

96.     By reason of the foregoing, Defendants have unjustly enriched themselves at the expense of JB Knowledge through unlicensed and unauthorized exploitation of JB Knowledge's trade secrets and Mark and continue to do so, in an unknown amount.

97.     JB Knowledge is entitled to just compensation under the common law of the State of Texas for Defendants' unjust enrichment, and specifically to a disgorgement of Defendants' proceeds from their wrongful acts.

**ATTORNEYS' FEES**

98.     JB Knowledge repeats and realleges the allegations contained in the foregoing Paragraphs 1-97 as if fully set forth herein.

99.     JB Knowledge is entitled to its reasonable and necessary attorneys' fees and costs, at least under 15 U.S.C. § 1117(a), and Tex. Civ. Prac. & Rem. Code Ann. §§ 134.000, *et seq.*

**JURY DEMAND**

100.    JB Knowledge demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff JB Knowledge prays that the Court enter judgment in JB Knowledge's favor against the Defendants as follows:

(a)     Preliminary and permanent injunctions enjoining and restraining Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them, from providing any services using constructing bidding software developed in whole or in part using JB Knowledge's SmartBidNet Software and/or other JB Knowledge trade secrets, and all other tangible items that accompany a license from JB Knowledge, including user guides, instructions, and any other electronic and/or written proprietary content.

(b)     An order requiring Defendants to destroy all copies and originals (regardless of medium) of the SmartBidNet Software, Software updates, other SmartBidNet materials, and all other JB Knowledge materials that Defendants accessed or possessed without JB Knowledge's authorization or in excess of JB Knowledge's authorization, and prohibiting any further use of the same for any purpose;

(c)     An order requiring Defendants to destroy all copies and originals of any competing construction bidding software developed from Defendants' access to, or receipt or use of, the SmartBidNet Software;

(d)     Defendants be ordered to pay damages to JB Knowledge in an amount to be determined at trial;

(e)     Defendants be ordered to disgorge their earnings from their unauthorized access to, and misappropriation and misuse of, JB Knowledge's trade secrets;

(f)     Defendants be ordered to pay statutory damages under Tex. Civ. Prac. & Rem. Code Ann. § 134.005(a)(1);

(g)     Defendants be ordered to pay exemplary damages to JB Knowledge under Tex. Civ. Prac. & Rem. Code Ann. § 134A.004(b);

(h)     Defendants be ordered to pay JB Knowledge's costs, including reasonable attorneys' fees; and

(i)     For such other relief as the Court deems just and equitable.

Date:  August 11, 2016

Respectfully submitted,

/s/ Lisa H. Meyerhoff

Lisa H. Meyerhoff
Attorney-in-Charge
Texas Bar No. 14000255
S.D. Admissions No. 18693
Email: Lisa.Meyerhoff@bakermckenzie.com
BAKER & MCKENZIE LLP
700 Louisiana, Suite 3000
Houston, Texas 77002
Phone: 713 427 5000
Fax: 713 427 5099

ATTORNEYS FOR PLAINTIFF
JB KNOWLEDGE TECHNOLOGIES, INC.

OF COUNSEL:

Lawrence D. Finder
Texas Bar No. 07007200
S.D. Admission No. 602
Email: Lawrence.Finder@bakermckenzie.com
Myall S. Hawkins
Texas Bar No. 09250320
S.D. Admission No. 7845
Email: Myall.Hawkins@bakermckenzie.com
BAKER & McKENZIE LLP
700 Louisiana, Ste. 3000
Houston, Texas 77002
Phone: 713 427 5000
Fax: 713 427 5099
ATTORNEYS FOR PLAINTIFF
JB KNOWLEDGE TECHNOLOGIES, INC.